THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES COLLINS, Defendant-Appellant.

First District (2nd Division) No. 61055

Opinion filed February 17, 1976.

270

Michael A. Unger, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Charles Collins, defendant, was found guilty by a jury of two counts of armed robbery (one of Kathie King and the other of Armstead Mitchell), one count of attempt murder and one count of aggravated battery, the latter two counts involving only Mitchell. Defendant's principal contention on appeal is excessiveness in sentencing him to concurrent 20 to 40 year terms for each of the armed robbery convictions and for the attempt murder conviction. Other issues on appeal are: whether the failure to file an abstract or excerpts of record allows affirmance on that ground alone[1]; whether the evidence presented at trial is sufficient to sustain the jury verdicts; and whether this court should vacate the judgment of conviction on the aggravated battery count where the trial court refused to impose a sentence for the reason that aggravated battery in these circumstances is a lesser included offense of the attempt murder conviction.

Kathie King and her husband, Armstead Mitchell, were preparing to close King's tavern at 5339 South Halsted Street in Chicago at 10:50 p.m. on April 10, 1973. Two males entered the tavern at that time, one taller (tall man) than the other, the other being later identified as the defendant. The tall man bought a can of pop from King while defendant asked Mitchell about the German shepherd dog behind the bar.

The two men left, returning two or three minutes later with a third man (short man), shorter than the other two. The tall man carried a double-barrelled shotgun while defendant and the short man each carried revolvers. The tall man announced this was a stickup and ordered Mitchell to put his hands on the bar. When he was slow to do so, defendant said "shoot him" and exchanged weapons with the tall man. When the German shepherd dog moved toward the robbers, defendant warned Mitchell he would kill the dog and, King asserted, kill Mitchell too, putting the discharge end of the shotgun up to Mitchell's face and telling him to hold the dog.

The short man ordered King to open the cash register and give him

---

[1] Defendant's motion to waive the requirement of filing abstract or excerpts was denied by this court on April 15, 1975. No abstract or excerpt has been filed in this case.

a paper bag and a bottle of whiskey while defendant told Mitchell to empty his pockets. When Mitchell looked toward the cash register, defendant told him he would blow his head off if he looked again. Mitchell instead looked directly at defendant, who was still holding a shotgun up to his face, for the remainder of the encounter. The short man left with the bottle of whiskey and money from the cash register and from Mitchell's pockets in a paper bag. The other two then backed out the door. Mitchell heard one of the men say, "Shoot him so he don't remember me." The tall man then pushed the door open with his feet, shot Mitchell with a revolver, inflicting a serious wound to the chest, and ran away.

King called the police, who took Mitchell to a hospital where, following surgery, he remained for ten days. At the hospital on the morning of April 11, King and Mitchell were separately asked to view between 80 and 200 photographs. No identification was made from these viewings. Later that morning at a police station, King was shown two more books and, on the afternoon of the 11th, three more books. She made no identification at this time. A police officer, who observed King viewing the books at the hospital and at the station, testified defendant's picture appeared in none of them.

In the early evening of the 11th, the police brought six photographs to the hospital, where Mitchell looked at them, and later to King's house, where she viewed them. Both King and Mitchell separately identified defendant's picture as portraying the man who had threatened Mitchell and put a shotgun in his face. The police thereafter arrested defendant. Between 3:30 and 4 a.m. on April 12, King viewed a lineup of five males at the police station, and again identified defendant as one of the robbers.

On April 14 a weapon was recovered from the scene of a shooting and four youths were arrested. The parties stipulated the .38-caliber revolver recovered was the same weapon used to shoot Mitchell. On April 27 King viewed a lineup of the four youths and did not identify anyone.

At trial both King and Mitchell again identified defendant and described the three men as they remembered them from the night of the robbery. King described the lighting and asserted the tavern had been "very light" and that the robbers had been in the tavern for between five and eight minutes. Defendant denied involvement in the events of April 10 and testified, as did his mother and his wife, that he was at home watching television on the night of April 10, 1973.

The jury found defendant guilty of two counts of armed robbery, one count of aggravated battery, and one count of attempt murder. The

trial court sentenced defendant to 20- to 40-year concurrent terms on the two armed robbery convictions and the one attempt murder conviction, explicitly refraining from sentencing on the aggravated battery conviction.

## I.

██ Initially, we refer to the failure of defendant-appellant's appellate counsel to file in this court an abstract or excerpts as required under Supreme Court Rule 342. This court could affirm for failure of the defendant, as appellate, to file an abstract or excerpts (*Denenberg v. Prudence Mutual Casualty Co.* (1st Dist. 1970), 120 Ill. App. 2d 68, 70, 256 N.E.2d 71; Ill. Rev. Stat. 1973, ch. 110A, par. 342)—especially in light of the court's refusal of defendant's motion to waive the requirement. But to do so would shift the effect of the failure to file to the defendant, whereas it was his attorney who violated the order of the court and the rule. Hence, we deem it proper to examine the merits of the case and dispose of the case accordingly.[2]

## II.

The second issue for our review is whether the evidence presented at trial was sufficient to sustain the jury verdicts. Defendant contends the identification by the two victim-witnesses is not sufficient to sustain the verdict without corroborating evidence. On the other hand, the State contends the positive identification by the two victim-witnesses was sufficient to sustain the verdicts.

The law is clear, as the State points out, that the testimony of one credible witness, if positive, identifying the defendant as the perpetrator of the crime or crimes charged, is sufficient to convict even though that testimony is contradicted by the defendant. (*People v. Miller* (1964), 30 Ill. 2d 110, 113, 195 N.E.2d 694.) Defendant points to the lack of physical evidence, to the failure of the police to uncover a brown corduroy coat which the victims claimed that defendant was wearing at the time of the incident, and to the recovery of the revolver used in the shooting of Mitchell in a separate shooting incident four days after the robbery in which neither defendant nor either of his alleged accomplices was involved. These are matters which the jury were called upon to consider. None, however, overcome the positive identifications made by both King and Mitchell.

██ Both King and Mitchell had well lighted and prolonged oppor-

---

[2] Simultaneously with the filing of this opinion, a rule to show cause will be served upon defendant's appellate counsel for the disregard of the court's order and failure to comply with Supreme Court Rule 342.

tunities to view defendant in the tavern. Indeed, Mitchell looked directly at the defendant from the time he was told not to look around again. Both witnesses looked through books of photographs and did not identify anyone in the books. The evidence showed defendant's photograph was not in those books. King viewed three lineups and made no identification other than of defendant in the only lineup in which the defendant participated. Both witnesses unequivocally and separately identified defendant when presented with his photograph and five photographs of persons with similar features less than 24 hours after the robbery. They later identified defendant at trial as well. Our review of the record leads us to conclude that the evidence shows the identifications were positive and more than sufficient to sustain the jury verdicts.

### III.

The third issue presented for our review is whether the trial court imposed minimum sentences in excess of those allowed for Class 1 felonies by the Uniform Code of Corrections, the Illinois Constitution, and the principle of indeterminacy. Defendant contends that section 5—8—1(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2)) was not complied with since no specific reasons appear on record for the trial court's imposition of concurrent minimum sentences of 20 years for the two armed robbery and one attempt murder convictions—all Class 1 felonies. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c)(1), 18—2(b).) Section 5—8—1(c)(2) of the Uniform Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2)) states:

> "(2) for a Class 1 felony, the minimum term shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term  * * *."

Defendant contends this provision and cases interpreting it and similar provisions in the Code require the trial judge imposing a greater minimum sentence than four years to include a statement of specific reasons for doing so in the record. None of the cases which defendant cites in support of this contention do in fact support it. It is unnecessary specifically to distinguish all the cases cited by the defendant inasmuch as the discussion below should both make the point explicit and dispose of the issue.

Some of the cases defendant cites merely adjusted minimum sentences imposed under pre-Code law, which required an absolute minimum of five years (Ill. Rev. Stat. 1971, ch. 38, par. 18—2), to conform with sentences imposed and to be imposed under the Code which requires four years. (*People v. Ike* (5th Dist. 1973), 10 Ill. App. 3d 933, 295 N.E.2d

250; *People v. Page* (1st Dist. 1973), 15 Ill. App. 3d 1008, 305 N.E.2d 666 (abstract opinion); *People v. Drungole* (1st Dist. 1973), 16 Ill. App. 3d 139, 305 N.E.2d 647 (abstract opinion); *People v. Sankey* (1st Dist. 1974), 18 Ill. App. 3d 361, 309 N.E.2d 758.) In other cases which defendant cites, the appellate court remanded for resentencing or itself reduced the sentences upon its own review of the record in which it found the reasons on record, or relied upon by the trial court, for imposing a higher sentence to be insufficient. (*People v. Pohle* (5th Dist. 1974), 19 Ill. App. 3d 400, 311 N.E.2d 731; *People v. Irons* (5th Dist. 1974), 20 Ill. App. 3d 125, 130, 312 N.E.2d 664; *People v. Belleville* (5th Dist. 1974), 20 Ill. App. 3d 1088, 314 N.E.2d 35; *People v. Bullion* (5th Dist. 1974), 21 Ill. App. 3d 297, 314 N.E.2d 731.) In many of the cases, no mention is made at all of the absence of a statement of reasons by the trial court. See, e.g., *People v. Wright* (4th Dist. 1974), 18 Ill. App. 3d 1028, 310 N.E.2d 494; *People v. Irons; People v. Pohle; People v. Kennel* (5th Dist. 1973), 13 Ill. App. 3d 446, 300 N.E.2d 529.

██ It seems clear, from the above cases and from the fact that the courts have for the most part examined the record in reviewing charges of excessiveness in sentencing, that a statement of specific reasons is not required so long as reasons appear on record supporting the addition of more years than is mandated by the Code. (See *People v. Butler* (3rd Dist. 1974), 21 Ill. App. 3d 331, 335, 315 N.E.2d 144.) The minimum sentences imposed in the present case were manifestly justified by reason of the activities of the defendant while in the tavern. The testimony of King and Mitchell portrays the defendant as a perpetrator of senseless violence and, in light of his threats and actions, one might assume that he was the instigator of the actual shooting of Mitchell, although he did not, in fact, pull the trigger. Undoubtedly it would be better, both for our review of sentences and for offenders' future contemplations of their individual transgressions against society, were trial judges specifically to state their reasons for adding years to the absolute minimum sentences mandated by the Code. But the absence of such statements, where adequate reasons can be adduced from the record, neither violates the Code nor constitutes grounds for disturbing such sentences. The trial record in the instant case plainly indicates that defendant's actions and the nature and circumstances of the offenses justify the sentences imposed.

Defendant also contends the 1970 Constitution of Illinois, article I, section 11 was violated by the imposition of these sentences. Section 11 states:

"§11. Limitation of Penalties after Conviction

All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender

to useful citizenship. No conviction shall work corruption of blood or forfeiture of estate. No person shall be transported out of the State for an offense committed within the State."

Defendant has pointed us to no case suggesting such a violation. Indeed all of defendant's citations seem to be offered in the assumption that nothing appears in the record to justify any additional sentence beyond the minimum required by the Code. Such is not the case and defendant's citations are, therefore, not of assistance.

■■ Section 11 contains the requirement that all sentences should consider the objective of restoring the offender to useful citizenship. Here the experienced trial judge imposed a sentence of 20 to 40 years which, when considered with the defendant's statutory parole rights,[3] does provide a basis by which the objective of restoration to useful citizenship is accommodated. As we mentioned earlier, after considering the seriousness of the offense and the rights of society and its citizens to be protected from such brazen attacks, we find no relief for defendant in either section 11 or the principle of indeterminacy.

Considering the defendant's conduct in the present case, we do not think the sentence is excessive. We refrain from exercising our discretion, under Supreme Court Rule 615 (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)), to reduce the sentences imposed on defendant. This discretion is to be exercised cautiously (*People v. DeSavieu* (1st Dist. 1973), 14 Ill. App. 3d 912, 922, 303 N.E.2d 782) and we find nothing in this record which would suggest exercising that discretion.

## IV.

■■ The final issue before this court is whether we should vacate the judgment on the aggravated battery count. The trial court stated he would not impose a sentence on the aggravated battery verdict, as it was a lesser included offense of the attempted murder verdict. Reference to the record makes manifest that the trial court did not sentence defendant on the aggravated battery verdict for this very reason. However, the common law record indicates the defendant was sentenced to 20 to 40 years on the aggravated battery (Ill. Rev. Stat. 1971, ch. 38, par. 12—4) charge. We therefore vacate the sentence and judgment on the aggravated battery count and direct the clerk of the circuit court of Cook County to amend the records accordingly. See *People v. DeSavieu.*

Judgment affirmed in part; vacated in part.

STAMOS and HAYES, JJ., concur.

---

[3] Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—1 *et seq.*