THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK MAZZONE *et al.*, Defendants-Appellants.

Third District   No. 76-31

Opinion filed October 13, 1977.

STOUDER, J., dissenting.

L. Robert Artoe, of Chicago, for appellants.

Edward Petka, State's Attorney, of Joliet (Thomas Cowgill, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant Lockport Theatre Corporation, proprietor of Roxy Theatre in Lockport, Illinois, and defendant Frank Mazzone, president of Lockport Theatre Corporation, were found guilty of obscenity, in a jury trial, for violation of section 11—20 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—20), based on the exhibition at the theater on March 3, 1975, for public patronage, of a motion picture called "Lollipops for Judy." The trial court entered the judgment of guilt on the jury's verdict and assessed a $500 fine against defendant Mazzone and a $1,000 fine against Lockport Theatre Corporation.

During the course of this appeal, defendants filed a motion for summary reversal on the assertion that the Illinois statute upon which they have been convicted is unconstitutional. It was also asserted in such motion that the United States Supreme Court had granted *certiorari* in the case of *Ward v. Illinois*, in an appeal from *People v. Ward* (1976), 63 Ill. 2d 437, and that the issue of unconstitutionality is based upon the contention that the statute involved was vague, indefinite, overbroad, and uncertain on its face and was thereby being tested as to its constitutionality. At the suggestion of the appellants, as well as the State, this court has awaited a determination of the United States Supreme Court in the *Ward v. Illinois* case referred to. That case has now been decided and released as a decision of the United States Supreme Court in

*Ward v. Illinois* (1977), ___ U.S. ___, 52 L. Ed. 2d 738, 97 S. Ct. 2085. (We will discuss the *Ward v. Illinois* case later in this opinion.)

On appeal defendants also argue that (1) the trial court was in error in allowing, over objection of defense counsel, the comment by the prosecutor in closing argument on the effect of the movie "Lollipops for Judy" on a person who has sexual fantasies, sexual hangups, or has been in a psychiatric hospital; (2) that the trial court erred in refusing to admit into evidence other movies adjudged not obscene in Illinois, as evidence of contemporary community standards; (3) that the trial court erred in refusing to allow defense counsel to cross-examine an expert regarding the report of "The President's Commission on Obscenity and Pornography"; (4) that the trial court erred in refusing to admit evidence pertaining to other movies on the same bill of fare as "Lollipops for Judy" to show material "taken as a whole"; (5) that the trial court erred in allowing, over defense counsel's objection and after the close of the case in chief for the defense, the release of the subject film from evidence for a special showing to the State's expert witness; (6) that the trial court committed error in making, in the presence of the jury, a statement that John Wayne has never been in an "adult" film; (7) that the trial court erred in refusing to allow certain defense witnesses to testify regarding the meaning of "prurient interests"; and (8) that the trial court was in error in refusing to give an instruction requiring the jury to return a verdict of not guilty if it found that the subject material was "not utterly without redeeming social value."

The defendants had filed in this court a motion to strike certain portions of the State's brief, which motion was taken for consideration with the appeal. The contention was that the State had failed to file a designation of additional excerpts of record, and this court should not consider those matters referred to in the State's brief which are not within defendant's designation of excerpts of record.

■■ Illinois Supreme Court Rule 342(a) (58 Ill. 2d R.342(a)) states in part:

> "The appellee shall file a designation of any additional excerpts from the record on appeal that he deems it essential for the judges of the reviewing court to read, together with proof of service thereof * * *."

In Rule 342(g) of the Supreme Court Rules (58 Ill. 2d R.342(g)), it is stated as follows:

> "(g) Entire Record Available. The entire record on appeal, whether or not contained in the excerpts from record or abstract, is available to the reviewing court for examination or reference. Omission of any relevant portion of the record from the excerpts from record or abstract shall not prejudice a party unless the

reviewing court finds that there has been no good-faith effort to comply with this rule."

In the practice notes to Rule 342 (Ill. Ann. Stat., ch. 110A, par. 342, Historical and Practice Notes, at 171-72 (Smith-Hurd 1976)), it is stated that since the entire record remains available to both court and counsel (Rule 342(g)), and since it is not necessary to require an additional abstract or excerpts to communicate to the court differences concerning the contents of the abstract or excerpts, the elimination of that requirement is consistent with the principle that it is not the duty of a successful litigant to correct deficiencies in appellant's abstract or excerpts. The responsibility for that obligation never shifts to the appellee. Since it is clear that this court has access to the entire record for the purpose of supporting the trial court judgment in this case, we deny the motion to strike heretofore filed herein by the appellant. This principle of supporting the trial court judgment by reference to the record has sometimes been expressed by the statement that the court of review will not search the record to reverse but will search the record to affirm.

It appears from the record that defendant Frank Mazzone is the president of the defendant Lockport Theatre Corporation (hereinafter called "Lockport") which operated the Roxy Theatre in Lockport, Illinois. On March 3, 1975, the Roxy Theatre was exhibiting a so-called "adult" motion picture program consisting of the movies "French Blue" and "Lollipops for Judy," along with a short "adult" cartoon. On that evening, officers of the Lockport, Illinois police department, along with an agent of the Federal Bureau of Investigation, executed a search warrant in the theater and confiscated the film "Lollipops for Judy." At that time, the projectionist and the manager, who were present at the theater, were arrested. On April 10, 1975, a Will County grand jury returned an indictment charging the projectionist, the manager, defendant Mazzone and defendant Lockport Theatre Corp. with the offense of obscenity as indicated above.

This case has been tried twice by a jury. When the first jury became deadlocked, a mistrial was declared. The jury for the second trial was selected on October 14, 1975. Prior to the commencement of the second trial, a motion to dismiss the projectionist was allowed by the trial court.

At the trial, the State produced an officer of the Lockport Police Department who testified that he saw the films "Lollipops for Judy" and "French Blue" at the Roxy Theatre. Subsequently, "Lollipops" was shown to the jury in the presence of the trial judge. After the film was shown, a Lockport police officer testified that he had previously viewed the film, and that he had on that occasion counted 18 acts of sexual intercourse depicted on the screen, 25 acts of fellatio, 10 acts of cunnilingus, 1 act of

masturbation and 8 demonstrated ejaculations. The officer testified that these acts alone comprised 41 minutes and 18 seconds of the film which lasted for the total of about 1 hour. Several witnesses were presented by the defense, including a movie theater operator, a university student, and a president of a film distributing company. Defendant Mazzone was the last witness called by the defense. Mazzone testified that, in all of his movie houses, his policy was to exclude those under 18 years of age and to let the public know that viewers offended by scenes of nudity or sexual intercourse should not patronize his theaters. Mazzone stated that he had not viewed "Lollipops" before it played at the Roxy, but that he had checked to determine whether "Lollipops" had encountered any legal problems and whether it had played elsewhere in Illinois.

In rebuttal, the State called Dr. Meyer Kruglick, a psychiatrist. Kruglick testified that he viewed "Lollipops," and that, in his opinion, the predominant appeal of the film for ordinary adults was to sexual interests and gratification of the viewer. In Kruglick's opinion, the effect of the film on the behavior of the ordinary adult would depend upon the personality structure, stability and security of the individual viewer, but the average adult, after watching the film for a time, "would get kind of bored." When questioned by the State's Attorney as to effects "on any other persons who might view the film other than ordinary adults," Dr. Kruglick responded that an individual who has not achieved a secure sexual identification may, after viewing a film like "Lollipops," make approaches that might be considered obnoxious by the person approached. The witness testified that he saw no scientific or educational value of any kind in the film, and that, in his opinion, "Lollipops for Judy" went substantially beyond customary limits of candor in exhibiting sexual activities.

After presentation of the evidence, instructions on the applicable law, and closing arguments of counsel, the jury returned a verdict finding defendants Mazzone and Lockport guilty of obscenity, and finding the manager of the Roxy Theatre not guilty of obscenity. As we have noted, the trial court entered judgment on the jury's verdict and assessed a fine of $500 as against Mazzone and a fine of $1,000 against Lockport. We will refer to additional facts in the course of this opinion, where such facts bear on the discussion of the issues.

Our first consideration is the determination as to whether or not the Illinois act, pursuant to which defendants were convicted, is unconstitutional, as contended by the defendants in their motion for summary judgment. In the case of *Ward v. Illinois*, to which we have referred, the United States Supreme Court determined specifically that the Illinois statute (Ill. Rev. Stat. 1975, ch. 38, par. 11—20) is not unconstitutional.

■■■ The United States Supreme Court, in the majority opinion in

*Ward v. Illinois*, recently issued, concluded that the Illinois statute is not unconstitutionally vague in failing to specifically define the kind of sexual conduct which could not be depicted. The court held this was so whether or not the State has complied with the requirements announced in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, that sexual conduct must be specifically defined by applicable state law as written or authoritatively construed. The Supreme Court indicated that ample guidance is available from previous decisions of the Illinois Supreme Court making it clear that the exhibition (such as engaged in by defendants in the instant case), did not conform to Illinois law. The United States Supreme Court stated that the Illinois statute is not unconstitutionally overbroad for failure to state specifically the kinds of sexual conduct, the description or representation of which the State intended to proscribe, where it appears that, in prior decisions, the Illinois Supreme Court, although not expressly describing the kinds of sexual conduct intended to be referred to under the *Miller* guideline, expressly incorporated such guideline as a part of the law, and thereby intended as well to adopt the *Miller* explanatory examples which gave substantive meaning to such guidelines by indicating the kinds of conduct or materials within its reach.

■■■ In the course of the opinion, Mr. Justice White stated, in the opening paragraph, that the principal issue in the case was the validity of the Illinois obscenity statute considered in the light of *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607. He pointed out that "[t]here we reaffirmed numerous prior decisions declaring [413 U.S. 15, 23] that 'obscene material is unprotected by the First Amendment.' " (___ U.S. ___, ___, 52 L. Ed. 2d 738, 742-43, 97 S. Ct. 2085, 2087.) The court acknowledged the inherent dangers of undertaking to regulate any form of expression, and recognized that official regulation must be limited to works which depict or describe sexual conduct. The court then pointed to the language of *Miller v. California* and in the process stated:

> "We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of *Memoirs v. Massachusetts*, 383 U.S. at 419" (___ U.S. ___, ___, 52 L. Ed. 2d 738, 743, 97 S. Ct. 2085, 2087),

and stated that such concept has "never commanded the adherence of more than three Justices at one time." (___ U.S. ___, ___, 52 L. Ed. 2d 738, 743, 97 S. Ct. 2085, 2087.) The Court pointed out that among the few plain examples of what a state statute could regulate were

> "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
>
> (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the

genitals." (____ U.S. ____, ____, 52 L. Ed. 2d 738, 743, 97 S. Ct. 2085, 2088.)

The court pointed out that the Illinois statute defines the word "obscene" as follows:

> " 'A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs.' " (____ U.S. ____, ____, 52 L. Ed. 2d 738, 743-44, 97 S. Ct. 2085, 2088.)

The court observed specifically, with some reference to *People v. Ridens*, 59 Ill. 2d 362, 321 N.E.2d 264, that:

> "* * * it is plain enough from its prior cases and from its response to *Miller* that the Illinois Court recognizes the limitations on the *kinds* of sexual conduct which may not be represented or depicted under the obscenity laws * * *." (____ U.S. ____, ____, 52 L. Ed. 2d 738, 747, 97 S. Ct. 2085, 2091.)

The United States Supreme Court therefore concluded that it could not hold the Illinois statute to be unconstitutionally overbroad. It is thus apparent that there is no merit to the argument made on behalf of the defendants on constitutional grounds, with respect to the second under which defendants were convicted.

■■ With respect to trial procedure, defendants first raise the contention that the trial court erred in allowing the prosecutor to make certain comments, over objection of the defense, in the State's rebuttal portion of closing arguments. It is noted that, after the defense counsel had finished his closing argument, the following took place during the State's rebuttal:

> "Mr. Goldstein [for the State]: The legislature of the State decided that certain things, certain films depicting certain sexual activity should not be viewed. But did they go about and say that any sexual act in a movie is per se, bad, the movie is bad? No, they didn't * * * We are not trying to say this movie is bad, we are saying this movie is obscene. And the legislature of the State has determined movies like this shouldn't be seen by people. This is what is happening. We don't know the effect of obscenity on people. Dr. Kruglick got on the stand and he said for an ordinary adult who has control over his sexual responses, control over himself, he sees the movie and he is bored. But there are also people who might have sexual fantasies who see this movie. All we have to prevent a person from going into a theater is his I.D., if a person is over 18 he is good to see a movie. No mention of whether

or not the person has ever been in a psychiatric hospital, whether or not that person has any sexual hangups, whether or not that person has any sexual fantasies.

Mr. Artoe [for the defense]: Objection your honor, this is not as to the law.

The Court: Objection is overruled.

Mr. Goldstein: We don't know the effect of the movie on people like that. Why must society wait until something is definitely shown to be bad before it is stopped or why shouldn't society anticipate it, anticipate on the basis of what Dr. Kruglick says, on the basis of a person who might see the movie, who has sexual fantasies, sexual hangups, who might go outside and might commit a sexually aggressive act against another female because of what he has gotten from the movie. Society should protect itself from this.

Mr. Artoe: Your Honor, I've got to object. I'm sorry.

The Court: The objection is overruled."

Defendants, focusing on the language of section 11—20(c) of the Criminal Code, that obscenity shall be judged with reference to ordinary adults, argue that the references by Mr. Goldstein to persons who have been in psychiatric hospitals, who are not ordinary individuals, and to persons with sexual fantasies and sexual hangups, who might not be ordinary individuals, referred to matters which could not be in evidence before the jury, and were inflammatory and prejudicial to defendants. Defendants urge, as the supreme court held in *People v. Beier* (1963), 29 Ill. 2d 511, 517, 194 N.E.2d 280, 283, that:

"Assumptions and statements of fact not based upon evidence in the case may not properly be argued to the jury, and under certain circumstances such as the present are prejudicial to the accused. [Citations.]"

Defense counsel, however, in his closing argument just prior to the State's rebuttal had argued that legislation like the obscenity act of Illinois is "the first step" and also argued that, "First thing that they do is tell you what you can't see. The next stop they tell you what you have to see." In a sense these remarks by defense counsel intimated that the State had no legitimate reason for not allowing material such as "Lollipops" to be shown, and in that same sense, the State's rebuttal responded with reasons for the State's legitimate concern. The United States Supreme Court has already determined that legislation such as the Illinois obscenity act is valid and proper legislation. In an analogous situation, the Illinois Supreme Court in *People v. Wheeler* (1955), 5 Ill. 2d 474, 485-86, 126 N.E.2d 228, stated:

"While it is error for the State's Attorney to comment on the failure

of the accused to produce witnesses who are equally accessible to the prosecution, it is not error for the State's Attorney to reply to a question propounded by counsel for the accused, and, where defense counsel has asked why the State did not produce certain witnesses, it is proper for the prosecuting attorney to ask defendant's counsel why he did not bring in the same witnesses so long as the remarks are properly limited to a reply. (*People v. Heywood*, 321 Ill. 380.) The remarks of the State's Attorney were invited by the remarks of defendant's counsel and defendant cannot claim he was prejudiced by the reply."

As the insinuations of defense counsel that the State had no proper motive for prohibiting material such as "Lollipops" prompted the State, in rebuttal, to come forth with legitimate reasons for such actions, the defendant should not now be allowed to claim he was prejudiced by the State's response.

■■ Additionally, as the court held in *People v. Lopez* (1957), 10 Ill. 2d 237, 240-41, 139 N.E.2d 724, *cert. denied*, 353 U.S. 975, 1 L. Ed. 2d 1138, 77 S. Ct. 1062:

"Careful scrutiny of the prosecutor's arguments discloses that in a few isolated instances he may have transcended the bounds of legitimate argument. * * * For example, there was evidence that the defendant sold a narcotic drug in violation of law, and it is common knowledge that the illegal drug traffic is a serious menace to society. It was proper to argue on the evil results of such a crime and urge fearless administration of the law. (*People v. Beil*, 322 Ill. 434; *People v. Pargone*, 327 Ill. 463.) Moreover, reversal is not warranted unless it appears that the acts complained of influence the jury in a manner that resulted in substantial prejudice to the accused."

In *Lopez* the prosecutor's closing argument included comment that the public were watching "to see what you [the jury] are going to do about dope" and "whether you [the jury] are going to let a man like this go out and destroy more lives." (10 Ill. 2d 237, 240.) It is apparent that the prosecutor's remarks in the instant case were directed towards the evil effect of obscenity upon society, rather than toward an attempt to comment on the evidence not properly before the jury. Further, as indicated in *Lopez*, the Illinois court recently held, in *People v. Walker* (1st Dist. 1975), 29 Ill. App. 3d 838, 841, 331 N.E.2d 267, 270:

"While a prosecutor's remarks may be subject to criticism, unless they constitute a major factor in the conviction, they are not grounds for reversal. *People v. Brown*, 132 Ill. App. 2d 302, 270 N.E.2d 501."

As we view the prosecutor's comments in the instant case, even if determined to be improper, such comments did not substantially prejudice defendants so as to require a reversal.

■■■ Defendants also contend that the trial court erred in sustaining the State's objections to offer of proof by defendants of other movies to demonstrate the standard relating to representation of sexual matter. Defendants made an offer of proof of "Cursed of Her Flesh," indicating that movie had been found not to be obscene. In response to a similar contention, the court in *United States v. Womack* (D.C. Cir. 1972), 509 F.2d 368, 374, stated:

> "In essence, it [contention that the jury should compare materials previously held nonobscene to the exhibits which are the subject of the instant prosecution] demands that the jury perform the judge's task of determining whether this issue should be disposed of as a matter of law. That is, it requires the jury to interpret the effect of a previous holding of non-obscenity as it bears upon the issues of the present case. Can it possibly be said that the jury is competent to interpret the *stare decisis* effect of various decisions, analyze the grounds of their holdings and distinguish them on their facts? This is clearly beyond the province of the jury and is a basic function of the judge."

We believe that the effect of the prior determination of nonobscenity of "Curse of Her Flesh" was properly a matter for consideration of the trial court, and that the court properly denied the defendant's offer of proof for presentation to the jury on this ground. Additionally, we note that defendants' offer of proof with respect to "Curse of Her Flesh," "Devil in Miss Jones" and "French Blue" may have been more generally intended to show community standards. In *Womack*, however, the court held at 509 F.2d 368, 377-78:

> "Since the issue at hand is the nature of community standards with respect to 'Works Like His Own,' in order for there to be a rational basis for its admission there must be a showing that the proffered evidence (1) is similar to his own, and (2) enjoys a reasonable degree of community acceptance. The burden is on defendant and in absence of such a showing, the evidence must be excluded as lacking sufficient probative value. In this regard the trial judge must be allowed 'wide discretion as to whether to permit the introduction of such allegedly comparable publications' since 'the admission of a number of different publications alleged to be comparable to the publication in issue might make the trial unmanageably complex and lengthy.' "

In the instant case, defendants' offer of proof did not include such a

sufficient foundation as to make the trial court's refusal of those offers an abuse of the trial court's discretion.

The next contention of defendants is that the trial court erred in refusing to allow defense to cross-examine Dr. Kruglick, the State's expert witness, regarding "The President's Commission on Obscenity and Pornography Report." After Kruglick testified on direct examination that an individual without a secure sexual identification, after viewing "Lollipops," might make an obnoxious sexual approach to persons, he acknowledged that he was familiar with the findings of the President's Commission. Defense counsel then posed the following question to Kruglick:

"Isn't it a fact that this [report] said that there was no evidence that exposure to explicit sexual materials plays a significant role in the causation of delinquent or criminal behavior among adults and that it could not conclude the exposure to erotic material is a factor in the causation of sex crimes or sex delinquency? And didn't it go on to say, on the contrary, that the Commission found on the positive side, explicit sexual materials are sought as a source of entertainment and information by a substantial number of American adults?"

■■ As stated in *People v. Peter* (1973), 55 Ill. 2d 443, 451-52, 303 N.E.2d 398, 404, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627:

" 'As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere.' (*People v. Gallo*, 54 Ill. 2d 343, 356; *People v. Halteman*, 10 Ill. 2d 74, 86.)"

Dr. Kruglick's testimony on direct examination included opinions that, in certain individuals, "Lollipops" might stimulate socially obnoxious behavior. The question posed by defense counsel concerned "Lollipops" contribution to sex crimes and sexual delinquency. In light of the "unsatisfactory quality of expert testimony" and the trial court's favored position in viewing the witnesses and the continuity of their testimony, we cannot say that the trial court abused its discretion in sustaining the State's objection to defense counsel's question, and thereby limited the scope of cross-examination of Kruglick reasonably.

■■ Defendants also argue that the trial court committed error in refusing evidence pertaining to the film "French Blue", which was on the bill of fare with "Lollipops" at the Roxy Theatre. "French Blue" is

apparently a film about making X-rated films. Defendants urge that the two films must be considered together as "material taken as a whole." As stated in an obscenity prosecution based upon photographs with a newspaper in California in *Scherr v. Municipal Court* (1971), 15 Cal. App. 3d 930, 934, 93 Cal. Reptr. 556, 559:

> "[T]he *redeeming* matter shall be related to that which is to be redeemed; that is, matter which, standing by itself, would be obscene."

The determination of the materials which are to be considered as a whole is, we believe, initially within the discretion of the trial court. Defendants have not established that the trial court abused its discretion in determining that "French Blue" was not sufficiently connected with "Lollipops" so that it would be considered as part of the same production.

Following presentation of defendants' evidence at trial, the State requested the release of the "Lollipops" film from the trial court for exhibition to Dr. Kruglick, the State's expert witness who was not able to view it when it was exhibited to the court and jury. Defendants argued that the trial court's allowance of this request, over defendants' objections, constituted reversible error. It appears that prior to the first trial in this cause defendants sought on several occasions to obtain the subject film for showing to defense witnesses, and that the trial court ordered the film released to the defense attorney. The State's Attorney's office, arguing that their entire case depended upon the showing of the film, refused to release the film to the defense for fear that it might be lost or destroyed. Defendants' brief states that the trial court then "refused sanctions against the State's Attorney." Defendants argue that, when seen in light of the trial court's action with respect to defendants' request for the film in their first trial, the trial court's allowance of the State's request constituted reversible error.

■■■ We believe that matters such as this issue should generally be left to the reasonable discretion of the trial court. Unless there is a clear abuse of the trial court's discretion to the defendant's prejudice, a reviewing court should not disturb the trial court's determination. (*Cf. Atz v. Goss* (1st Dist. 1974), 21 Ill. App. 3d 878, 316 N.E.2d 29.) In the cause before us, it appears that the trial court did no more for the State than it did for defendants. The trial court ordered compliance with the request of each party. Defendants state that the trial court refused to "sanction" the State's conduct for failing to release the film to defendants, but it is not clear what sanctions the trial court declined to impose. It appears that what is here referred to is the trial court's refusal to impose sanctions on the State, where the issue may have been a reconsideration of the trial court's original order, in light of the State's genuine concern, as evidenced by the State's failure to comply with the release order. As a

matter of fact, the defense witnesses all viewed "Lollipops" when the film was shown at the trial and defendants cannot here argue that they were prejudiced by the trial court's rulings. In such circumstances, and in view of the record in this case, we do not believe that the trial court abused its discretion.

■■ Defendants also contend that certain comments by the trial court prejudiced defendants in the trial of the cause. During direct testimony of Tracy Lamb, a movie theater operator testifying for the defense, the following exchange took place:

"Mr. Goldstein [for the State]: Objection, Your Honor, the question is vague as to 'any worse than average film.'

Mr. Artoe [for the defense]: I think the average A-rated film.

The Court: You didn't say average X-rated film. I never saw John Wayne in one of these.

The Witness: That's true.

Mr. Artoe: Seen Marlon Brando in one of them, Your Honor?

The Court: I didn't watch it."

In *People v. Smalley* (2d Dist. 1973), 10 Ill. App. 3d 416, 427, 294 N.E.2d 305, 312, the court stated:

"It is true that there is a high duty on the court to avoid giving any impression to the jury that would in any way influence their verdict. (*People v. Walinsky* (1921), 300 Ill. 92, 97: *People v. Henderson* (1966), 72 Ill. App. 2d 89, 93-94.) However, the court's comment is so ambiguous as to have had no effect upon the jury."

Considering a similar contention, the Illinois Supreme Court in *People v. Speed* (1972), 52 Ill. 2d 141, 145, 284 N.E.2d 636, 638-39, *cert. denied* (1972), 409 U.S. 983, said:

"[The trial court's] comment was made during the stress of the trial and may have lacked the circumspection which should characterize the statements of the trial court. However, it did not constitute reversible error."

In the instant case, the court's comment is not beyond criticism. However, the influence, if any, of the comment upon the jury was quickly erased by defense counsel's return quip regarding Marlon Brando. The court's comment was not so significant as to constitute reversible error.

■■ Defendants next contend that the trial court erred in refusing to allow certain defense witnesses to testify regarding "prurient interests" and "obscenity." The alleged error is compounded, in defendant's view, since questions regarding "prurient interest" were stricken when asked of the two defense witnesses, but allowed when asked of another defense witness and of the State's expert witness. It appears that the stricken questions queried whether the witness knew what "prurient interest"

meant and whether the witness had any reason to believe that "Lollipops" was obscene in the opinion of the witness. Questions allowed asked whether "Lollipops" went "beyond what is customary." It appears that the trial court's evidentiary rulings were based primarily upon the valid distinction between ultimate facts (rather than simple personal opinions) and facts properly for a jury's consideration. As stated in *Weiner v. Transatti* (1st Dist. 1974), 19 Ill. App. 3d 240, 246, 311 N.E.2d 313, 318:

> "Although regulation of direct examination of witnesses is largely a matter left to the sound discretion of the trial judge, that discretion should not be exercised in a way that will inhibit a party from effectively presenting his cause to the jury."

We conclude that the rulings of the trial court were not an abuse of discretion and did not prevent defendants from effectively presenting their case to the jury.

Defendants contend also that the trial court erroneously instructed the jury on the definition of obscenity. The jury was instructed that, for material to be obscene, the jury must find "that the work taken as a whole lacks serious literary, artistic, political or scientific value." Defense counsel stated he had no objection to this instruction.

The instruction which was given to the jury contained a definition of obscenity based on the broader standard set forth in *Miller v. California*, 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607. Defense counsel later orally requested that the judge give an instruction based solely on the "utterly without redeeming social value" standard, which uses language appearing in the Illinois obscenity act. The trial court was not presented with a written instruction or proposed instruction which incorporated that language. The court denied the oral request.

Under section 67(1) of the Civil Practice Act of this State (Ill. Rev. Stat. 1975, ch. 110, par. 67(1)) it is provided that:

> "The court shall give instructions to the jury only in writing, unless the parties agree otherwise, and only as to the law of the case. An original and one copy of each instruction asked by any party shall be tendered to the court."

It is also provided that each instruction should be accompanied by a copy, and a copy delivered to opposing counsel. By Illinois Supreme Court Rule 451(c) and (d) it is also provided that the Civil Practice Act sections are specifically made applicable to the criminal proceedings by Supreme Court Rule. (Ill. Rev. Stat. 1975, ch. 110A, par. 451(c) and (d).) As we have noted, no written instruction was tendered incorporating the language referred to orally by defense counsel.

■■ We also note that this issue is not properly presented for review, since defendants, in their post-trial motion, did not include any allegations of error with respect to jury instructions. Failure to object to instructions

prior to review, itself ordinarily constitutes a waiver of objection, and also the failure to raise an issue as to instructions in the post-trial motion constitutes a waiver of any such issue. Defendants therefore waived the right to have the issue considered on appeal. *People v. Long* (1968), 39 Ill. 2d 40, 43, 233 N.E.2d 389; *People v. Ahlberg* (3d Dist. 1973), 13 Ill. App. 3d 1038, 1042, 301 N.E.2d 608, 611.

Defendants contend that while this is true, the court should give consideration to the invocation of the so-called "plain error" doctrine and consider this issue. In *People v. Johnson* (3d Dist. 1975), 28 Ill. App. 3d 139, 144, 327 N.E.2d 535, we stated:

> "Defendant however urges that this question should be considered for the first time on appeal as a plain error affecting substantial rights of the defendant under Supreme Court Rule 615(a) [citation]. The 'plain error' doctrine does not require that a reviewing court consider all errors involving substantial rights even though not brought to the attention of the trial court. (*People v. Pickett*, 54 Ill. 2d 280, 283, 296 N.E.2d 856, 858 (1973).) The rule is permissive, and it is within the discretion of the reviewing court whether to consider an error not raised in the trial court. (*People v. McAdrian*, 52 Ill. 2d 250, 255, 287 N.E.2d 688 (1972).)"

■■ In the instant case, there is no dispute as to the fact that defendants displayed "Lollipops for Judy" containing sexual material, clearly violative of the Illinois obscenity statute. This is the second trial of the cause, and defendants have had more than a normally adequate time within which to prepare their case and inform themselves as to the applicable rules. In view of the entire record in this cause and the procedures incident to the submission of the cause to the jury, we do not believe that it is appropriate to invoke the plain error doctrine on this issue.

As a matter of fact, the record showed that the attorney for the defense actually argued to the jury in his final argument that there could be no conviction in this case unless the jury determined that the film, which was exhibited and seen by the jury, was utterly without redeeming social value. The cause which we are considering is not one in which the jury could determine what in fact was exhibited only through the mouths of witnesses. The jury actually saw the film which was the subject of the prosecution. An instruction given to the jury told them that they must find that the picture "taken as a whole, lacks serious literary, artistic, political or scientific value." Defense counsel not only stated he had no objection to this instruction, but argued, in his final argument, in addition to his statement that the jury must find that the picture was utterly without redeeming social value, that the prosecution failed to show that the picture lacked serious literary, artistic, political or scientific value. The

jury, which had seen the film, clearly did not agree with counsel for the defense but found that the unrelieved depiction of sexual acts shown in the film made it clearly violative of the Illinois obscenity act.

■■ To the extent that there were procedural errors, emanating from both sides of the case, it is clear that there was no error which was sufficiently prejudicial to justify a reversal, and it is apparent to the court that the giving of the additional instruction requested would not have made any difference in the determination of the violation of the obscenity act by the jury. Where the errors in the record could not have reasonably affected the result, the errors are deemed to be harmless and the judgment of conviction should be affirmed. (*People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766; *People v. Castillo* (1st Dist. 1976), 40 Ill. App. 3d 413, 421, 352 N.E.2d 340.) An accused is guaranteed a fair trial, not one totally free from error. (*People v. Ashley* (1960), 18 Ill. 2d 272, 164 N.E.2d 70, *cert denied* (1960), 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255; *People v. Blackman* (1st Dist. 1976), 44 Ill. App. 3d 137, 140-41, 358 N.E.2d 50.) We conclude that none of the errors asserted on appeal would justify a reversal in this cause *People v. Berry* (1960), 18 Ill. 2d 453, 165 N.E.2d 257; *People v. Stahl* (1962), 26 Ill. 2d 403, 186 N.E.2d 349; *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County, and the sentences imposed upon defendants, are affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

After carefully examining the majority opinion, I respectfully disagree with portions of what my colleagues have said and the result which they reach. The occurrence of what I perceive to be fundamental errors requires me to urge that the case be reversed and remanded for a new trial.

Numerous issues have been raised by the defendant on appeal, each of which has been considered by the majority. Without enumerating the issues in which I agree with the majority opinion, suffice it to say that I am in disagreement only upon those issues which are discussed hereinafter.

As concerns the defendant's motion to strike portions of the State's brief, I agree with the majority that we should give effect to Rule 342(g) and consider all of the State's brief. However, I believe the reasoning of the majority all but eliminates the requirements of filing additional excerpts under Rule 342(a). The availability to this court on appeal of the entire record should not be used to encourage circumvention of an

equally important rule requiring additional excerpts. As is aptly stated in the practice notes to Rule 342(g):

"Even though the entire record on appeal is available for perusal by the reviewing court it is impossible in a system where multiple judge panels sit on review of cases to rely on the judges' access to the record to produce familiarity with the issues raised by the record on appeal. Without accurate and complete excerpts or abstracts, appellate review simply will not work effectively." (Ill. Ann. Stat., ch. 110A, par. 342, Historical and Practice Notes, at 172 (Smith-Hurd 1976).)

In *People v. Collins* (1976), 36 Ill. App. 3d 269, 343 N.E.2d 550, the defendant had failed to file an abstract or excerpts as required by Rule 342. While the court did review the merits of defendant's appeal, it issued a rule to show cause to the attorney in question for the disregard of the Rule. The failure of an appellee to file additional excerpts cannot be placed on the same plane as the failure of an appellant to file excerpts, but some type of sanction should be imposed for the failure of an appellee to file additional excerpts in this cause.

While my colleagues have not expressed an opinion as to the propriety of Dr. Kruglick's testimony concerning the effect of "Lollipops" on persons other than ordinary adults, I believe that because his testimony is impossible to separate from the objectionable portions of the State's rebuttal remarks, it is necessary for me to comment upon it. During direct examination of Dr. Kruglick, the following occurred over defendant's objection:

"STATE'S ATTORNEY: And would there be any other effect on any other person who might view the film, other than ordinary adults?

DR. KRUGLICK: It is conceivable to me and I've seen this happen on a few occasions, where an individual who has not achieved a secure sexual identification may gain the idea from viewing the film of this kind that females have a tendency to be aggressive, that they are easily approachable and then may make actually after viewing the film like that, within a matter of time—what I'm trying to say is, he leaves the movie theater and encounters some girl on the street and may, as a result of the stimulus, make approaches that might be considered to be obnoxious by the one whom he approaches."

The United States Supreme Court in *Roth v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, determined that obscenity must be judged by reference to the ordinary adult. In formulating this standard, the Court rejected an earlier leading standard for judging obscenity which had required that the material be judged merely by the

effect of an isolated excerpt upon particularly susceptible persons. (*Regina v. Hicklin* (1868), L.R.3 Q.B. 359.) Section 11—20(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—20(c)) relied upon by defendant is merely a codification of the ordinary adult standard announced in *Roth*.

The portion of the direct examination quoted above related to "other than ordinary people" and was therefore improper and irrelevant. It was improper because it suggested to the jury that they could properly consider the effect of "Lollipops" on other than ordinary people when determining whether or not the film was obscene, which contravenes the ordinary adult standard set forth in *Roth*. Furthermore, it was irrelevant because the effect of the film on other than ordinary adults was not probative of any issue in the case, as it is the film's effect on ordinary adults that is at issue. The error occasioned when the court allowed the quoted question and answer over defendant's objection was compounded when the State's Attorney choose to comment and expand on the doctor's testimony during his rebuttal argument.

The State in its rebuttal argument, as quoted by the majority, referred to individuals who are in need of psychiatric hospitalization or examination, or who have such severe sexual fantasies that they are prompted by seeing a sexually explicit film to commit a sexually aggressive act. These are the particularly susceptible persons the Supreme Court has decreed are not the ones to be considered when determining whether or not material is obscene. Like the testimony of Dr. Kruglick, which I have already discussed and disapproved, the issue concerns ordinary adults and not psychopaths or the mentally disturbed. It is one thing to argue fearless administration of the law for the evil results of crime, as the majority maintains, it is quite another to argue a standard which is inappropriate to gauge whether defendant's conduct is a violation of law in the first place. It was improper for the State to argue the effect of the film on particularly susceptible persons.

My colleagues have avoided discussing the propriety or impropriety of the State's rebuttal remarks, choosing instead to focus on the State's claim that the remarks were an invited response to defendant's closing argument. I disagree with their conclusion that the rebuttal remarks were an invited response for several reasons.

First, I do not believe that the defendant's general argument urging the virtues of First Amendment protection called attention to the specific subject matter of the State's rebuttal and could not therefore invite the response which was given by the State. In a leading case on invited response, *People v. Heywood* (1926), 321 Ill. 380, 152 N.E. 215, the court held that the State was entitled to respond in rebuttal to a question

propounded by the defense counsel in closing argument, even if the response was otherwise improper. The court stated:

"It has been held that it is error to comment upon the fact that the accused has not produced witnesses who are equally accessible to the prosecution [citation], but the situation in that case was materially different from that presented to the court by the objection made in this case. Here the prosecutor was simply replying to a question which had been propounded by the attorney for the accused, and this he had a right to do. The [trial] court properly limited the argument to a reply to the argument of opposing counsel." 321 Ill. 380, 383, 152 N.E. 215, 216.

In *People v. Wheeler* (1955), 5 Ill. 2d 474, 126 N.E.2d 228, cited by the majority and which relied on *Heywood*, defense counsel during closing argument queried the State's Attorney as to the whereabouts of a witness and implied the State did not call the witness because his testimony would exonerate the defendant. The court held that it was not error for the State to reply to a question propounded by defense counsel so long as the remarks were carefully limited to replying to that question. In *People v. Pearson* (1972), 52 Ill. 2d 260, 287 N.E.2d 715, the court found that a remark by the State's Attorney made while successfully objecting to an improper statement by defense counsel during closing argument had been invited by the improper statement.

The link common to these three cases is that a defendant cannot claim prejudice when the State is allowed a limited reply upon the specific subject matter of the defense counsel's remarks. In two cases, the State was in effect allowed only to answer a question and in the third, the State's Attorney made an offhand remark while objecting to improper argument. Here, the objectionable argument by the State does not deal with the same specific subject matter of defense counsel's argument. Nothing in defense counsel's statement, to which the State is allegedly responding, is even suggestive of Dr. Kruglick's testimony, psychiatric hospitalization, sexually aggressive acts, or psychiatric examination. Hence, the "response" of the State's Attorney is outside the scope of the rule established in *Heywood, Wheeler* and *Pearson,* and the trial court should have sustained defendant's repeated objections.

I also question whether it is ever permissible to respond to proper argument with improper argument as was done here. While *Heywood* and *Wheeler* do not discuss whether or not defense counsel's argument was proper, I submit the rule is that it is the impropriety of defense counsel's remarks which enables the State to respond with further improper argument. In conclusion, I believe the State's remarks were neither invited nor a response to any arguments of defense counsel, either

proper or improper. By permitting the improper remarks over repeated objections of defense counsel, the court placed its stamp of approval on an improper standard.

My next concern relates to the failure of the court to allow defense counsel to cross-examine Dr. Kruglick from "The Final Report of the President's Commission on Obscenity and Pornography (1970)." In *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, the court rejected the long standing Illinois rule that an expert witness can only be interrogated about those texts upon which he expressly bases his opinion. Instead, the court adopted the more liberal rule which had long been advocated by Wigmore and other authorities. Announcing the new rule the court stated:

> "The unsatisfactory quality of expert testimony has been the subject of frequent comment, and it has induced judicial action. [Citations.] An individual becomes an expert by studying and absorbing a body of knowledge. To prevent cross-examination upon the relevant body of knowledge serves only to protect the ignorant or unscrupulous expert witness. In our opinion expert testimony will be a more effective tool in the attainment of justice if cross-examination is permitted as to the views of recognized authorities, expressed in treatises or periodicals written for professional colleagues." (33 Ill. 2d 326, 335-36, 211 N.E.2d 253, 259.)

While the President's final report may not constitute a text or learned treatise and hence not come under the literal terms of the *Darling* rule, it does represent an in-depth study by an impartial, nonpartisan group of eminent scholars.

In *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779, the court found proper a witness' reference to clinical studies on oral contraceptives when stating the basis for his expert opinion. The court, relying on *Darling*, stated that the witness "could have been cross-examined as to * * * [his medical] opinion in light of the professional literature from which he formed that opinion as well as other relevant medical literature." 64 Ill. 2d 543, 558, 356 N.E.2d 779, 787.

Clearly, "The final Report of the President's Commission on Obscenity and Pornography (1970)" is an eminent and recognized work in this field. It has been cited in Supreme Court decisions and is an official government publication. (See, *e.g., Kaplan v. California* (1973), 413 U.S. 115, 37 L. Ed. 2d 492, 93 S. Ct. 2680; *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628.) Hence, the report constitutes a work which comes under the *Darling* rule as applied in *Lawson*.

The majority report of the commission concluded there was no evidence that exposure to explicit sexual material played a significant role

in the causation of delinquent or criminal behavior among youth or adults (Report of the Commission on Obscenity and Pornography 27 (1970); *Paris Adult Theatre v. Slaton* (1973), 413 U.S. 49, 108 n. 26, 37 L. Ed. 2d 446, 487 n. 26, 93 S. Ct. 2628, 2660 n. 26), while Dr. Kruglick expressed a contrary opinion. I have previously expressed my views on the impropriety of the State's inquiries of Dr. Kruglick as to the effect "Lollipops for Judy" would have on a person with sexual fantasies. But whether or not those inquiries were proper, once the witness answered the question and expressed his opinion, the defendant was entitled to cross-examine the witness as to the contrary opinion reached in the final report. Consistent with my views, the witness could have been questioned from the final report on any relevant material contained in the report, either by the defense counsel on cross-examination or the prosecution on rebuttal. The trial court erred when it refused to allow defendant to conduct such a cross examination.

I cannot agree completely with my colleagues as to the trial court's refusal to allow defense witnesses to answer certain questions. The questions relating to obscenity which were asked of expert witnesses Lamb and Freeberg were improper, but only because the question attempted to elicit irrelevant testimony. The questions called for a personal opinion as to whether the witness believed the movie was obscene. Such an opinion was irrelevant because obscenity must be judged by a reference to community standards and cannot be determined on the basis of personal criteria. However, if the question had been phrased properly, the expert witness would have been able to express an opinion as to the film's obscenity or non-obscenity as determined from application of relevant community standards. As was aptly stated in *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 340 N.E.2d 550:

> "The fact that an expert witness, in stating his opinion, will testify to an ultimate issue of the case does not render his testimony inadmissible. In *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809, the Supreme Court approved the practice of permitting an expert to express his opinion upon ultimate facts of the case, reasoning that since the triers of fact are not required to accept the expert opinion, such evidence does not usurp the province of the jury." (34 Ill. App. 3d 1059, 1070, 340 N.E.2d 550, 558.)

Here, no contention is made that defendant's witnesses had not been qualified during trial as experts. Hence, those experts could have expressed an opinion on the issue of obscenity. But see *United States v. West Coast News Co.* (6th Cir. 1966), 357 F.2d 855.

Consistent with the foregoing, I believe that defendant's experts should

have been allowed to answer questions directed to whether "Lollipops" went beyond what is customary and questions as to what prurient interest meant. While due process does not require the State to introduce the opinions of experts as to whether the film is obscene where the film itself is introduced into evidence and viewed by the jury, either the State or the defendant may introduce opinion evidence (*Kaplan v. California* (1973), 413 U.S. 115, 37 L. Ed. 2d 492, 93 S. Ct. 2680. See also concurring opinion of Justice Frankfurter in *Smith v. California* (1959), 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215, as to either social value or community standards). (See *United States v. West Coast News Co.* (6th Cir. 1966), 357 F.2d 855, and cases cited therein.) Just as a qualified expert in a malpractice case may testify as to whether the actions engaged by the defendant comply with the standards of the medical profession, so to can a qualified expert in the realm of obscenity testify to each of the factors which taken together determine whether or not material is obscene. It is interesting to note the trial judge apparently realized his error because he allowed two subsequent defense witnesses to answer the same questions he had previously sustained objections to. Defendant should have been permitted to introduce opinion evidence from qualified experts relating to community standards and prurient interests.

My most serious objection to the majority opinion concerns their holding on the failure of the trial court to correctly instruct the jury on the tri-partite test to be used in determining whether material is obscene. The State has conceded error on this point, but argues, as does the majority, that defendant has failed to preserve the issue for review. I cannot agree with such a position. First I believe the defense counsel's tender of an oral instruction on the "utterly without redeeming social value" standard was sufficient to preserve the issue for review in light of the fact that neither the State nor the trial judge questioned defense counsel's offering the instruction orally. Any technical deficiency occasioned by tendering an oral instruction in lieu of a written instruction was waived when the State failed to object.

While defense counsel did not specify as error in his post-trial motion the refusal of the court to give the "utterly without redeeming social value" test, I believe the error is of such magnitude as to warrant consideration under the plain error doctrine. In *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, the court aptly stated:

> "Now, we are aware of cases which hold that a 'trial judge has no duty to give instructions on his own motion where defendant does not request them.' [Citations.] We believe, however, that the application of this salutary principle must have its limits, and that such boundaries are coextensive with the common-sense administration of the jury system. If no instructions were tendered

by either counsel, we think that a trial judge would be abdicating his responsibilities if he were then to permit the jury to retire for its deliberations uninstructed on the law, and free to improvise its own concepts of the crime or crimes charged. As a matter of fact, it should no more be the responsibility of the defense than of the State to tender 'definition' or 'elements of the crime' instructions. Such instructions are essential to tell the jury what the case is about, and, in our opinion, are not the kinds which necessarily bear favorably upon some phase or theory of defense * * * and would, in consequence, require the tender of such instructions by the defendant. Which may be another way of saying that we consider this type of instruction so vital to the veriest function of a jury that it must be the court's responsibility to make sure that such a one is given, directing its preparation, if necessary. The absence of such a fundamental instruction in the instant case produces a situation where the deficiency in the totality of the jury's instruction is so great as to require a review by this court in the interest of fair trial or the proper administration of justice, even though there was no prior objection or assignment of error." 74 Ill. App. 2d 450, 453-54, 221 N.E.2d 63, 66. But *cf. People v. Truelock* (1966), 35 Ill. 2d 189, 192 N.E.2d 187; *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847.

The State has the burden of proving the defendant guilty, and such burden must include presentation of evidence and an instruction on each element of the offense. To do otherwise would shift the burden of proof to the defendant.

This court in *People v. Thomas* (1976), 37 Ill. App. 3d 320, 346 N.E.2d 190, relying on *City of Delavan v. Thomas* (1975), 31 Ill. App. 3d 630, 334 N.E.2d 190, found that one of the essential elements of the offense charged was "that the material is utterly without redeeming social value." We concluded the failure to instruct the jury as to that element was reversible error. A similar conclusion here is no less compelling. While the foregoing error alone is sufficient to warrant a new trial, when it is combined with what I perceive to be other errors, a new trial is clearly mandated.