THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRY HANSERD *et al.*, Defendants-Appellants.

Second District   Nos. 84—334, 84—336 cons.

Opinion filed September 26, 1985.

Sam Adam, of Chicago, for appellants.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, and John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Terry Hanserd, was charged in a three-count information with the offense of obscenity (Ill. Rev. Stat. 1983, ch. 38, par. 11–20(a)) for the sale of three magazines: "Sister Suckers," "Nighthawk in Leather," and "Solo Suck Off." Defendant Gregory R. O'Shaughnessy was charged in a three-count information with the offense of obscenity for exhibiting or making available these same magazines. Following a jury trial, defendants were each convicted of three counts of obscenity. Hanserd was sentenced to a term of 120 days in jail and ordered to pay a five of $750 on each of the three charges. O'Shaughnessy was sentenced to a term of 364 days in the county jail and was ordered to pay a fine of $1,000 on each of the three charges.

Four issues are raised by their consolidated appeals: (1) whether the trial court abused its discretion in excluding the testimony of defendants' expert witness; (2) whether Hanserd was denied the effective assistance of counsel; (3) whether the trial court erred in refusing defendants' proposed jury instructions; and (4) whether the convictions violated due process of law and the prohibition against *ex post facto* laws. Because we conclude the trial court abused its discretion in excluding the testimony of defendants' expert witness, we reverse their convictions and remand for retrial.

■ Defendants assert that the trial court erred in excluding the testimony of their only witness, Dr. Eileen Thatcher. The admissibility of expert testimony in obscenity cases is determined by applying rules which govern the admissibility of expert testimony in other cases. (See, *e.g., Yudkin v. State* (1962), 229 Md. 223, 182 A.2d 798.) Be-

cause of the special interests involved in an obscenity case, however, some courts scrutinize more carefully the exclusion of expert testimony proffered by the defense on the obscenity test criteria. (*Commonwealth v. United Books, Inc.* (1983), 389 Mass. 888, ___, 453 N.E.2d 406, 412.) The trial court should make two preliminary determinations before ruling on the admissibility of expert testimony: (1) will the expert testimony be of assistance to the trier of facts in understanding the evidence or determining a fact in issue, and (2) is the witness properly qualified to give the testimony sought. (Cleary & Graham, Illinois Evidence sec. 702.1 (4th ed. 1984).) The party offering the expert has the burden of establishing the expert's special knowledge. (*People v. Free* (1983), 94 Ill. 2d 378, 410, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 514). A determination of the sufficiency of an expert's qualifications rests largely within the sound discretion of the trial court. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 250.) A witness may be qualified by reason of knowledge, skill, experience, training or education, and the degree and manner of knowledge of an alleged expert is directly related to the complexity of the subject matter and the likelihood of error by one who is unfamiliar with that subject matter. *People v. Park* (1978), 72 Ill. 2d 203, 209-10.

In their attempts to qualify Thatcher as an expert, defendants established that she was a Ph.D. in psychology and maintained a private practice in Kankakee, Orland Park, and at two locations in Chicago. She received a bachelor of arts degree from the University of Illinois in anthropology, with minors in psychology and mathematics. She later received a master of arts degree with honors from Roosevelt University and, in 1976, a Ph.D. in psychology from Michigan State University. Her Ph.D. involved five to six years of course work in which she treated patients under supervision. Her major areas of emphasis during her doctoral studies were clinical and personality psychology. She taught a course on human sexuality for three years at Michigan State University to groups of students ranging from 600 to 1,200 and has also taught courses at Roosevelt University and St. Xavier University.

As a prerequisite to her practice in Illinois, Thatcher underwent and passed an examination and was thereafter certified by the Department of Registration and Education of the State of Illinois. In her seven years of private practice, she has treated both homosexual and heterosexual patients and had seen approximately 60 patients within the previous year with sexual dysfunction problems. As part of their treatment, she employed sexually explicit material, including *The Joy*

*of Sex* and "magazines that you can obtain in an adult book store." She used magazines similar to those involved in the instant case "only heterosexual." Thatcher's patients even brought into her office heterosexual materials as graphic as the instant magazines. Although she has treated homosexual patients, she explained she did not use sexual dysfunction treatment with them because at the time of their treatment, none of her patients had sexual partners.

Thatcher stated her training and experience as a psychologist enabled her to assess the effect the magazines would have upon homosexual, heterosexual and other social groups because "[t]hose are the things that psychologists deal with on a regular basis." She also predicated her ability to determine the impact of the magazines on different groups on her knowledge and experience gained from discussions with her patients concerning their sexual fantasies and practices, from psychology textbooks, and from lectures offered by groups like the Illinois Psychological Association.

On the basis of her testimony, defendants argued Thatcher was qualified as an expert witness regarding the prurient appeal and social value of the magazines. At the trial court's suggestion, defendants then made an offer of proof outside the presence of the jury. Thatcher testified that "Sister Suckers" would not appeal to an average person's prurient interest, but would be stimulating to a heterosexual male. She stated that "Sister Suckers" would not appeal to a lesbian's prurient interest in sex because "[t]hese are sex acts that are normally engaged in by female homosexuals." The magazine could also be instructive for inexperienced lesbians. "Sister Suckers" would not have any effect on a homosexual male or a heterosexual female. "Nighthawk in Leather" would have no effect on a heterosexual male, would have minimal effect on a lesbian or heterosexual female, but would likely excite a homosexual's normal interest as opposed to a prurient interest in sex. "Solo Suck Off" would have no effect on any group because "it was sort of analogous to going to a freak show at the circus."

Her opinion was that both "Sister Suckers" and "Nighthawk in Leather" would have redeeming social value; the former being useful in treatment of sexual dysfunction in lesbians and heterosexual males and the latter useful in the similar treatment of homosexual males. In response to a question from the judge, Thatcher stated the value of the magazines extended not only to the treated person, but also to homosexuals who were not aware of the accepted behavior in their culture.

Although neither party has cited any decision determining the ad-

missibility of expert testimony on the obscenity test elements of prurient interest and social value, such testimony, including that of psychologists and psychiatrists, has been introduced in obscenity trials in this State and in other jurisdictions. See *People v. Hart* (1981), 101 Ill. App. 3d 343, 427 N.E.2d 1352 (defendant introduced expert testimony of psychologist on prurient appeal and social value of film depicting homosexual and heterosexual conduct); *People v. Mazzone* (1977), 52 Ill. App. 3d 859, 368 N.E.2d 207, *vacated on other grounds* (1978), 74 Ill. 2d 44 (testimony from psychiatrist offered by State and from defense witness regarding prurient interest resulting from and social value of film); *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847 (defendants introduced testimony in trial court of two psychologists on prurient interest and social value criteria); *United States v. Petrov* (2d Cir. 1984), 747 F.2d 824, *cert. denied* (1985), 471 U.S. ___, 85 L. Ed. 2d 318, 105 S. Ct. 2037 (defendant's expert on sexual dysfunction testified that certain photographs depicting bondage and torture did not appeal to the prurient interest of the average person); *Yudkin v. State* (1962), 229 Md. 223, 182 A.2d 798 (qualified psychiatrist can testify as to psychological consequences of challenged literature); *cf. United States v. Bagnell* (11th Cir. 1982), 679 F.2d 826, *cert. denied* (1983), 460 U.S. 1047, 75 L. Ed. 2d 803, 103 S. Ct. 1449 (district court did not abuse its discretion in admitting prosecution expert testimony of homosexual pastor on prurient interest generated by homosexual material); see generally *Smith v. California* (1959), 361 U.S. 147, 165, 4 L. Ed. 2d 205, 218, 80 S. Ct. 215, 225 (Frankfurter, J., concurring) ("community standards or the psychological or physiological consequences of questioned literature can as a matter of fact hardly be established except through experts").

The only obscenity decision in Illinois disclosed by our research in which the court ruled on the admissibility of expert testimony is *People v. Mazzone* (1977), 52 Ill. App. 3d 859, 368 N.E.2d 207, *vacated on other grounds* (1978), 74 Ill. 2d 44, where the third district of our appellate court concluded the trial court did not abuse its discretion in striking several questions asked of two defense witnesses. Both witnesses were asked whether they knew what prurient interest meant and whether the subject film was obscene. Concluding that the questions were properly stricken, the *Mazzone* court construed the trial court's ruling as predicated on the rule that testimony on ultimate facts is improper. In dissent, Justice Stouder agreed that the questions were properly stricken, but only because they were irrelevant, and not because they were governed by the ultimate fact rule. Noting that the defense witnesses were never challenged as experts, Jus-

tice Stouder relied upon *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, for the proposition that an expert is not precluded from testifying on the ultimate issue in the case because the trier of fact is not required to accept the opinion of the expert. (*People v. Mazzone* (1977), 52 Ill. App. 3d 859, 881, 368 N.E.2d 207, 222.) Justice Stouder's view regarding the ultimate fact rule is consistent with the law in Illinois today. (*Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 504, 470 N.E.2d 1163, 1171; Cleary & Graham, Illinois Evidence sec. 704.1 (4th ed. 1984); compare *United States v. West Coast News Co.* (6th Cir. 1966), 357 F.2d 855, 859, *rev'd on other grounds sub nom. Aday v. United States* (1967), 388 U.S. 447, 18 L. Ed. 2d 1309, 87 S. Ct. 2095 (defense experts who testified on literary value and social importance of and contemporary community standards regarding book were properly precluded from further testifying on the ultimate issue of whether book was obscene).) Therefore, the *Mazzone* court's ruling, striking the questions based upon the ultimate fact rule, is of questionable validity.

Irrespective of the merits of the *Mazzone* court's reliance on the ultimate-fact rule, that decision does not support the trial court's exclusion in the instant case of Thatcher's entire testimony. As noted above, the trial court in *Mazzone* struck two questions asked of two defense witnesses, but otherwise allowed their testimony. Additionally, as the appellate court in *Mazzone* acknowledged, the same two questions which were stricken when asked of the two defense witnesses were allowed when later asked of another defense witness and of the State's expert witness. In fact, the State's expert witness was a psychiatrist who, based upon his review of the film in question, testified regarding the predominant appeal of the film, the effect of the film on the behavior of the ordinary adult, the scientific and educational value of the film, and whether the film went substantially beyond the customary limits of candor in exhibiting sexual activities. Interestingly, the opinion in *Mazzone* contains no indication that the psychiatrist even used explicit films in his practice, much less the type of film that was the subject of the prosecution in *Mazzone*. Nevertheless, his testimony was admissible. Therefore, rather than reading *Mazzone* as warranting exclusion of Thatcher's testimony in the case at bar, we find the admission of the psychiatrist's testimony on the elements of prurient interest and social value supportive of our conclusion here that the trial court abused its discretion in excluding her testimony.

Our conclusion is consistent with the language of the Illinois obscenity statute. (Ill. Rev. Stat. 1983, ch. 38, par. 11—20.) Section 11—20(c) states that in a prosecution for an offense under that section, ev-

idence shall be admissible to show:

"(1) The character of the audience for which the material was designed or to which it was directed;

(2) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect if any, it would probably have on the behavior of such people;

(3) The artistic, literary, scientific, educational or other merits of the material, or absence thereof; \*\*\*." (Ill. Rev. Stat. 1983, ch. 38, pars. 11—20(c)(1), (2), (3).)

The Committee Comments explain that the purposes behind the inclusion of the list of different types of admissible evidence were both "to serve as a guide and to deter a trial court from holding any one of the types to be inadmissible \*\*\*." (Ill. Ann. Stat., ch. 38, par. 11—20, Committee Comments, at 371 (Smith-Hurd 1979).) In construing section 11—20(c), the supreme court in *People v. Sikora* (1965), 32 Ill. 2d 260, 264, acknowledged that evidence of the social importance of a magazine is admissible in an obscenity prosecution. See also *People v. Mazzone* (1977), 52 Ill. App. 3d 859, 882, 369 N.E.2d 207, 222 (Stouder, J., dissenting) ("Just as a qualified expert in a malpractice case may testify as to whether the actions engaged [*sic*] by the defendant comply with the standards of the medical profession, so to [*sic*] can a qualified expert in the realm of obscenity testify to each of the factors which taken together determine whether or not material is obscene").

Absent any direct Illinois authority, we find persuasive several foreign jurisdiction decisions which reversed a defendant's obscenity conviction because of the trial court's exclusion of defense expert testimony. In *Commonwealth v. United Books, Inc.* (1983), 389 Mass. 888, 453 N.E.2d 406, the defendant established on *voir dire* that the witness was a professor of English, had taught a class surveying erotic art throughout the centuries, and had conducted an independent investigation of erotic art in the local area. Based upon the *voir dire*, the defendant sought to qualify the witness as an expert on both the artistic value of the film and the State's community standards. The trial court concluded the witness was not qualified as an expert concerning either element of the obscenity test. On appeal, the Supreme Judicial Court of Massachusetts emphasized the importance of defense expert testimony in obscenity cases and stated:

" 'Where the question is whether portrayals of sexual conduct are "obscene" under the statutory definition, it would be a rare case in which testimony from a qualified expert should be excluded on the ground that it would not be helpful to the trier of

fact.' " (*Commonwealth v. United Books, Inc.* (1983), 389 Mass. 888, 895, 453 N.E.2d 406, 412, quoting *Commonwealth v. Trainor* (1978), 374 Mass. 796, 374 N.E.2d 1216.) Finding no reason to exclude the expert's testimony, the *United Books* court reversed the defendant's conviction. See also *Commonwealth v. Dane Entertainment Services, Inc.* (1984), 18 Mass. App. 446, 467 N.E.2d 222 (testimony of defense expert witness, an English and film studies professor, held admissible on the artistic and literary value of the film).

In *Yudkin v. State* (1962), 229 Md. 223, 182 A.2d 798, the trial court excluded the defendant's experts who would have testified that the book *Tropic of Cancer* had literary merit. Applying the traditional evidentiary standards which governed the admission of expert testimony in Maryland, the Court of Appeals of Maryland ruled that the trial court's exclusion of the testimony of the literary critics and authors offered by the defendant constituted reversible error. See also *Kaplan v. California* (1973), 413 U.S. 115, 121, 37 L. Ed. 2d 492, 498-99, 93 S. Ct. 2680, 2685 ("The defense should be free to introduce appropriate expert testimony"); *Saliba v. State* (Ind. App. 1985), 475 N.E.2d 1181 (defendant's conviction reversed where trial court excluded the results of defendant's public opinion poll on community standards); *State ex rel. Leis v. William S. Barton Co.* (1975), 45 Ohio App. 2d 249, 344 N.E.2d 342, 351 ("it is error for a trial court to deny, or unreasonably curtail a defendant's right in an obscenity case to introduce into evidence otherwise competent and non-repetitive testimony or exhibits which directly relate to or bear upon the absence of any or all of the elements of the *Miller* [*Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607] obscenity test"); *Keene v. Commonwealth* (Ky. 1974), 516 S.W.2d 852, 855 (defendant is entitled to introduce expert testimony on community standards on retrial of obscenity case as long as the evidence is appropriate); but see *Sedelbauer v. State* (Ind. App. 1984), 462 N.E.2d 244 (trial court did not abuse discretion in refusing to allow expert testimony on community standards); see generally F. Schauer, The Law of Obscenity (1976).

■ In support of the trial court's ruling excluding Thatcher's testimony, the State raises three arguments. First, the State contends Thatcher had no experience with the type of materials which form the basis of the instant charges. Thatcher did testify that she had not conducted sexual dysfunction therapy using homosexual materials because all of her homosexual patients were single and such therapy requires that the patient have a sexual partner. However, Thatcher need

not have used homosexual magazines in her practice to be qualified as an expert. Her use of sexually explicit heterosexual materials in treating sexual dysfunction, her work with homosexual patients, her experience teaching a course on human sexuality at Michigan State University and her extensive education adequately enabled her to offer an opinion both as to the effect of these magazines upon different readers and as to the magazines' therapeutic value. Moreover, knowledge of the value of these magazines in the treatment of sexual dysfunction is beyond the ken of the average layman and thus, expert testimony would have been helpful to the jury. Any arguable deficiency in Thatcher's experience by virtue of not having used these types of magazines in her treatment of her homosexual patients would affect the weight to be accorded her testimony and not her competency to testify. *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 244-45, 476 N.E.2d 427, 434-35; *City of Chicago v. Bank of Ravenswood* (1981), 93 Ill. App. 3d 52, 55, 416 N.E.2d 1115, 1118.

The State next argues that Thatcher was not shown to be aware of the general public's views regarding sexually explicit material on homosexuality or masturbation. The State raises this objection to support its conclusion that Thatcher was not qualified to testify as to contemporary community standards in Illinois; one of the statutory elements of obscenity. (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(b).) Review of the record and defendants' appellate brief, however, establishes that defendants did not offer Thatcher's testimony on the element of statewide contemporary community standards, but rather only on the elements of prurient interest and social value. Therefore, the State misconstrues the bases upon which defendants offered Thatcher's testimony.

■ The third argument raised by the State in support of excluding Thatcher's testimony is that "such testimony would invade the province of the jury without proper foundation" and "is a legal opinion which the witness was not qualified to make." While citing no authority for these two statements, the State seems to be arguing three distinct points. First, the State challenges the foundation for Thatcher's testimony. Since we have already rejected this argument earlier in this opinion, we need not address it again here. Second, the State asserts that Thatcher's testimony invades the province of the jury. Initially, we note that even expert testimony on an ultimate issue in a case does not invade the province of the jury. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122.) Also noteworthy, though not dispositive, is that trial courts in several jurisdictions, including Illinois, have admitted expert testimony rele-

vant to the same elements of obscenity on which Thatcher's testimony was offered. (*Pinkus v. United States* (1978), 436 U.S. 293, 56 L. Ed. 2d 293, 98 S. Ct. 1808; *United States v. 56 Cartons* (4th Cir. 1967), 373 F.2d 635, *rev'd on other grounds sub nom. Potomac News Co. v. United States* (1967), 389 U.S. 47, 19 L. Ed. 2d 46, 88 S. Ct. 233 (bench trial); *People v. Hart* (1981), 101 Ill. App. 3d 343, 427 N.E.2d 1352; *People v. Mazzone* (1977), 52 Ill. App. 3d 859, 368 N.E.2d 207, *vacated on other grounds* (1978), 74 Ill. 2d 44; *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847; *Commonwealth v. Dane Entertainment Services, Inc.* (1984), 18 Mass. App. 446, 467 N.E.2d 222.) We therefore are unpersuaded by the State's contention that Thatcher's testimony on prurient appeal and social value invaded the province of the jury.

The State also apparently contends that Thatcher's testimony would have improperly addressed legal questions which are solely for the judge and not for the jury to resolve. This contention is inconsistent with its argument previously discussed that her testimony would have invaded the jury's province as factfinder, and is also inconsistent with the Illinois obscenity statute which expressly permits testimony on the elements at issue. (Ill. Rev. Stat. 1983, ch. 38, pars. 11–20(c)(1) through (3).) Moreover, the cases cited above in which experts offered testimony to the jury on the elements of obscenity undermine the State's contention that the obscenity test elements of social value and prurient interest involve legal questions only properly resolved by the court.

■ The third point raised by the State in support of the trial court's exclusion of Thatcher's testimony is that her opinion "was obviously the witness' personal opinion based upon the social sciences." Whether or not Thatcher's testimony was based upon her personal opinion, she was nonetheless qualified as an expert, and thus her testimony was properly offered on the questions of social value and prurient interest. We agree with the State that Thatcher's testimony was based on the social sciences, because psychology is a social science. (American Heritage Dictionary Of The English Language 1226 (1973).) While Thatcher's testimony necessarily will be based upon her education and training in the social sciences, the jury's responsibility is to review Thatcher's opinions and reasoning and then to determine for itself the proper weight to be accorded her testimony. Accordingly, we do not find persuasive any of the reasons proffered by the State for excluding Thatcher's testimony.

■ Applying the traditional principles which govern the admission into evidence of expert testimony in Illinois generally, we con-

clude both that Thatcher was qualified to testify and that her testimony as represented in her offer of proof would have assisted the trier of fact in making its obscenity determination. While not required to believe Thatcher's testimony (*Hamling v. United States* (1974), 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887; see, *e.g., People v. Tannahill* (1976), 38 Ill. App. 3d 767, 348 N.E.2d 847), the jury should have been allowed to hear her opinions that the magazines possessed social value and did not appeal to prurient interest. Since Thatcher's testimony was directly relevant to two of the obscenity test criteria and was the only testimony offered by defendants, we conclude the court's ruling excluding her testimony constitutes an abuse of discretion and necessitates reversal of defendants' convictions.

■ In light of our disposition, we do not address defendants' contentions regarding their proposed jury instructions which the trial court denied and Hanserd's challenge to the competency of his counsel. We do find it necessary to consider defendants' arguments that their convictions violated due process of law and the prohibition against *ex post facto* laws. The State argues and defendants do not contradict that they never raised before the trial court the argument that their prosecutions violated the prohibition against *ex post facto* laws. To preserve an issue for appellate review, a party must object at trial (*People v. Roberts* (1979), 75 Ill. 2d 1), and must include the issue in his post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282.) This waiver rule applies to constitutional questions as well as other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280.) Because defendants failed to raise the *ex post facto* issue either during the trial or in their post-trial motions, they have failed to preserve the issue for appellate review.

■ Defendants likewise failed to object during the trial on the basis that their due process rights had been violated. Their only references in the trial court to due process were their identical allegations in their post-trial motions that "[t]he defendant was denied due process and the equal protection of the law." A party cannot raise constitutional errors by general allegations without explaining how his rights have been infringed. (*People v. Palkes* (1972), 52 Ill. 2d 472, 474, *appeal dismissed* (1973), 411 U.S. 923, 36 L. Ed. 2d 386, 93 S. Ct. 1892.) Vague and general allegations that one has been deprived of due process of law without specifically identifying the manner in which his constitutional rights were violated are insufficient to raise the issue. (*Janson v. Pollution Control Board* (1979), 69 Ill. App. 3d 324, 329, 387 N.E.2d 404, 408.) Defendants' bare assertions in their post-trial motions that their due process rights had been violated

failed to identify the manner in which their constitutional rights allegedly were infringed. Accordingly, defendants' vague allegations of due process violations were insufficient to raise the issue asserted on appeal and that issue therefore has been waived.

Defendants' convictions are reversed, and the proceedings are remanded for retrial.

Reversed and remanded.

STROUSE and SCHNAKE, JJ., concur.